*851 TEXTO COMPLETO DE LA SENTENCIA
Comparece la Agencia Estatal para el Manejo de Emergencias y Administráción de Desastres (en adelante AEMEAD o recurrente) y nos solicita que revisemos una resolución emitida por la Oficina de la Procuradora de las Mujeres (en adelante Procuradora o recurrida) el 27 de febrero de 2008, la cual fue archivada en autos el mismo día. Mediante tal Resolución, se adoptó un informe emitido el 8 de febrero de 2008 por la Oficial Examinadora, Leda. María Soledad Ramírez Becerra, se impuso a AEMEAD una multa de $5,000.00, y se ordenó al recurrente a cumplir con la política pública existente sobre la prevención del Hostigamiento Sexual en el lugar de trabajo. En el informe preparado por la Oficial Examinadora se determinó que AEMEAD incumplió deberes establecidos en el Procedimiento Interno para Procesar Querellas sobre Hostigamiento Sexual en el Empleo (en adelante Procedimiento Interno).
Contando con la comparecencia de las partes y con el derecho aplicable, procedemos a confirmar la resolución recurrida.
I
La señora Irasemia Rivera (en adelante señora Rivera o querellante) laboró desde el 1999 a 2006 en AEMEAD. Ésta comenzó como voluntaria y posteriormente se desempeñó como empleada irregular, bajo nombramientos, por términos fijos, hasta el 30 de marzo de 2006. El 4 de noviembre de 2005, la señora Rivera presentó una queja ante el Director Ejecutivo de AEMEAD contra su supervisor inmediato por alegados actos de hostigamiento sexual. Dicha querella fue referida al Director de Recursos Humanos de AEMEAD para que se realizara la investigación correspondiente y se rindiera un informe. Como parte de esa investigación, el Director de Recursos Humanos de AEMEAD citó a la señora Rivera para- que fuese entrevistada por la investigadora designada; sin embargo, ésta no acudió a dicha citación. Surge del expediente que la señora Rivera solicitó la inhibición de la investigadora del caso por alegadas irregularidades con otros casos que la misma había atendido. Como parte de su trabajo, la investigadora designada entrevistó al supervisor inmediato de la señora Rivera, el señor George L. Pacheco (en adelante señor Pacheco), y a doce (12) compañeros de trabajo de ésta. Examinó el sistema de cable del televisor de la oficina donde trabajaba la querellante debido a que ésta había señalado que en el mismo se proyectaban películas pornográficas. Posteriormente, la investigadora rindió un informe, en el cual concluyó que no ocurrieron los señalados actos de hostigamiento sexual.
Así las cosas, el 20 de diciembre de 2005, se presentaron ante el Tribunal de Primera Instancia, Sala de Gurabo (en adelante TPI), tres denuncias criminales en contra del señor Pacheco por los alegados actos de hostigamiento sexual. El 12 de junio de 2006, el TPI dictó sentencia declarando al señor Pacheco no culpable de cometer una infracción al Artículo 146 del Código Penal, el cual tipifica el delito de acoso sexual.
El 26 de enero de 2006, a la señora Rivera se le notificó que su nombramiento en AEMEAD sería extendido *852 hasta el 31 de julio de ese año. Sin embargo, el 2 de marzo de 2006, se envió a la señora Rivera otra notificación por parte de AEMEAD mediante la cual le informaban que, por falta de disponibilidad de fondos, su nombramiento terminaría efectivo el 31 de marzo. Posterior a esto, la señora Rivera acudió a la Oficina de la Procuradora de las Mujeres. El 3 de noviembre de 2006, la División de Querellas de dicha Oficina presentó una querella formal ante el foro especializado de la Procuradora para adjudicar controversias. En la querella presentada por la División de Querellas se señaló que AEMEAD incumplió con el procedimiento interno reglamentario por: haber concluido la investigación del caso sin que se entrevistase a la señora Rivera; por.no haber tomado una acción inmediata ni correctiva en protección de la persona que presentó la queja; y porque se incumplió con el deber legal de orientar a los empleados de la Agencia sobre el hostigamiento sexual.
El caso fue referido a la Leda. María Soledad Ramírez Becerra para que actuara en capacidad de Oficial Examinadora. Ésta, celebró vistas los días 16 y 28 de noviembre de 2007. En dichas vistas se presentó prueba testifical y documental. La parte querellante declaró, así como la señora Luz Nevares, investigadora externa de AEMEAD; el señor Carlos Salgado, Director de Recursos Humanos de AEMEAD; el señor García, empleado de AEMEAD; el señor Oscar Sotomayor, Director de Operaciones y Respuestas de AEMEAD, y el señor Niño Correa, Coordinador de Búsqueda y Rescate de la Agencia recurrente.
El 8 de febrero de 2008, la Oficial Examinadora rindió un informe a la Procuradora respecto a este caso. En su informe, la Leda. Ramírez Becerra concluyó que surge de la prueba que la señora Rivera no cooperó con la investigación realizada por AEMEAD. En dicho informe se indicó además que la señora Rivera había solicitado la inhibición de la investigadora designada por AEMEAD y que acudió al Tribunal para solicitar que se evadiese el trámite administrativo. Según la Oficial Examinadora, dichas actuaciones justifican razonablemente que AEMEAD concluyera su investigación sin entrevistar a la señora Rivera, pues no podía obligar a la misma a cooperar, ni dejar la investigación inconclusa. Sobre ese aspecto, concluyó que AEMEAD cumplió con parte de su política pública en lo que concierne a su deber de investigar diligentemente la querella y rendir un informe escrito a tiempo.
Por otra parte, la Oficial Examinadora concluyó que AEMEAD hizo caso omiso a su deber de tomar medidas preventivas para evitar represalias, y el contacto de la alegada hostigada con el alegado hostigador. Indicó la Leda. Ramírez Becerra en su informe que, a pesar de que la señora Rivera había presentado queja ante el Director Ejecutivo de AEMEAD el 7 de noviembre de 2005, no fue hasta el 23 de noviembre de ese año que se envió notificación al señor Pacheco con relación a la querella. Por lo tanto, concluyó que AEMEAD permitió que la querellante continuara trabajando en la misma oficina en que se encontraba el alegado hostigador, como supervisor, y no la trasladó. Esto, en violación de su Procedimiento Interno.
Además, la Oficial Examinadora concluyó en su informe que la recurrente falló al no coordinar ni ofrecer charlas educativas sobre hostigamiento sexual en el empleo, antes del año 2006. Se indicó que la Agencia incumplió con su procedimiento interno, así como, con la política de la Ley Núm. 17 de 22 de abril de 1988, Prohibición del Hostigamiento Sexual en el Empleo, 29 L.P.R.A. sees. 155 et seq. (en adelante Ley 17). Indicó la Oficial Examinadora que AEMEAD hizo caso omiso a su propio procedimiento interno, en lo que respecta a tomar medidas preventivas para evitar represalias controlando el contacto de la señora Rivera con el señor Pacheco y, además, incumplió con el deber de ofrecer y coordinar charlas sobre prevención del hostigamiento sexual.
El 27 de febrero de 2008, la Procuradora emitió Resolución mediante la cual se acogieron las determinaciones de hechos y conclusiones de derecho contenidas en el informe sometido por la Oficial Examinadora y se declaró con lugar la querella. La Procuradora impuso una sanción de $5,000.00 a AEMEAD y les ordenó a cumplir cabalmente con la política pública establecida sobre prevención de hostigamiento sexual en el lugar de trabajo. De igual modo les ordenó que en futuras ocasiones ante alegaciones de incidentes de hostigamiento sexual deberán cumplir con el procedimiento establecido para evitar que se repita el alegado *853 hostigamiento sexual.
Inconforme, AEMEAD acude ante nos para señalar que la Procuradora cometió los siguientes errores:
“Erró la OPM al declarar con lugar la querella determinando que AEMEAD violó su propia política pública, la Ley de 22 de abril de 1988 (...) y la Ley 212 del 3 de agosto de 1999, al incumplir con implantar en su totalidad su Procedimiento Interno para Procesar Querellas sobre Hostigamiento Sexual en el Empleo.
Erró la Oficina de la Procuradora de las Mujeres al imponer una multa de $5,000.00 a AEMEAD.
Erró la Oficina de la Procuradora de las Mujeres al ordenarle a AEMEAD a cumplir con el procedimiento establecido en sus normas internas para evitar que se repita el alegado hostigamiento sexual, toda vez que la Oficial Examinadora expresamente dijo que no entró a dirimir la ocurrencia de hostigamiento sexual en el presente caso.”
n
La Ley Núm. 17 establece la política pública del Estado Libre Asociado de Puerto Rico (en adelante E.L. A.) con relación al hostigamiento sexual en el empleo. El Artículo 1, de la referida Ley, dispone que el hostigamiento sexual en el empleo constituye una forma de discrimen por razón de sexo y, como tal, constituye una práctica ilegal e indeseable que atenta contra el principio constitucional de que la dignidad del ser humano es inviolable. 29 L.P.R.A. see. 155. En específico, el Artículo 3 de la Ley Núm. 17, 29 L.P.R.A. see. 155 b, define el hostigamiento sexual en el empleo de la siguiente manera:
“[E]l hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:
a. Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.
b. Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
c. Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de una persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo.” (Cita omitida).
La Ley 17 establece también que todo patrono tiene el deber de mantener el centro de trabajo libre de hostigamiento sexual e intimidación y deberá exponer claramente su política contra el hostigamiento sexual ante sus supervisores y empleados y garantizará que puedan trabajar con seguridad y dignidad. Artículo 10, Ley 17, 29 L.P.R.A. see. 155 i. Cumpliendo con la obligación que se le impone al patrono de prevenir, desalentar y evitar el hostigamiento sexual en el empleo, éste deberá tomar las medidas que sean necesarias o convenientes con ese propósito incluyendo, pero sin limitarse a las siguientes:
“(a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.
(b) Poner en práctica los métodos necesarios para crear conciencia y dar conocer la prohibición del hostigamiento sexual en el empleo.
(c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes, a empleo de los derechos y protección *854 que se les confiere y otorga bajo esta Ley, al amparo de la Ley Núm. 69 del 6 de julio de 1985, de la Ley Núm. 100 de 30 de junio de 1959, según enmendada y de la Constitución del Estado Libre Asociado de Puerto Rico.
(d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual.” Id
La Ley Orgánica de la Oficina de la Procuradora de las Mujeres, Ley Núm. 20 de 11 de abril de 2001, 1 L.P.R.A. see. 311 et. seq., establece como política pública el garantizar el pleno desarrollo y respeto de los derechos humanos de las mujeres y el ejercicio y disfrute de sus libertades fundamentales. La Oficina de la Procuradora debe cumplir con el propósito de que se investiguen y se provean los remedios y las actuaciones correctivas que sean necesarias ante acciones u omisiones que lesionen derechos de las mujeres. Id (énfasis nuestro). De igual manera, dicha Oficina está facultada para aprobar reglamentación, fiscalizar y velar que las agencias gubernamentales y las entidades o instituciones privadas cumplan con su política pública. Id (énfasis nuestro). La citada Ley Orgánica establece que la Oficina de la Procuradora tendrá entre sus deberes y funciones el radicar, a su discreción, ente los tribunales, los foros administrativos e instrumentalidades y subdivisiones políticas del E.L.A. las acciones que estime pertinentes para atender las violaciones a su política pública. Artículo 9 (c), Ley Núm. 20, 1 L.P.R.A. see. 317 (c) (énfasis nuestro), Específicamente, el Artículo 10 (a) de la citada Ley Orgánica establece que la Oficina de la Procuradora debe:
“Atender, investigar, procesar y adjudicar querellas relacionadas con acciones y omisiones que lesionen los derechos de las mujeres, les nieguen beneficios y las oportunidades a que tienen derecho, y afecten los programas de beneficio para las mujeres; y conceder los remedios pertinentes conforme a derecho, así como ordenar acciones correctivas a cualquier persona natural o jurídica, o cualquier agencia que niegue, entorpezca viole o perjudique los derecho y beneficios de las mujeres.” 1 L.P.R.A. see. 318 (a)
La Procuradora también está facultada para establecer los sistemas necesarios para el acceso, recibo y encausamiento de las reclamaciones y quejas que insten las mujeres. Artículo 11, Ley Núm. 20, 1 L.P.R.A. see. 319. (énfasis nuestro). Las querellas promovidas ante la Oficina de la Procuradora se tramitarán en la forma que disponga el Reglamento sobre Procedimientos Investigativos y Adjudicativos, Reglamento Núm. 6615 de la Oficina de la Procuradora de las Mujeres, aprobado el 6 de mayo de 2003, el cual fue promulgado en virtud de las disposiciones de la Ley Núm. 170 del 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2101 et seq.
En el año 2000, AEMEAD aprobó el Procedimiento Interno para Procesar Querellas sobre Hostigamiento Sexual en el Empleo (en adelante Procedimiento Interno), según requerido por la Ley 17, supra. En el Artículo V del referido documento, la AEMEAD se impuso algunas responsabilidades específicas entre éstas:
“a) Ofrecer acceso y orientación a todos los empleados de la Agencia.
b) Coordinar y ofrecer charlas educativas sobre el hostigamiento sexual en el empleo. (Énfasis nuestro)
c) Velar porque la Agencia cumpla con las disposiciones de la Ley 17 del 22 de abril de 1988, la Ley 69 del 6 de julio de 1985 y la Ley 100 del 30 de junio de 1959.
d) Velar porque se cumpla la política pública de la Agencia.” (Énfasis nuestro)
El Artículo X de dicho Procedimiento Interno establece que luego de la presentación del Informe de Investigación requerido cuando se presenta una queja, el Director Ejecutivo de AEMEAD podrá adoptar, modificar o prescindir de las recomendaciones que le formule el funcionario que hace la investigación. Se indica en el citado artículo que de mediar una determinación adversa al empleado o funcionario, el Director Ejecutivo le advertirá de su derecho a apelar la misma ante la Junta de Apelaciones del Sistema de Administración de Personal dentro de treinta (30) días a partir del recibo de la notificación.
*855 El Artículo XI del Procedimiento Interno dispone:
“Con el propósito de proteger al querellante de posibles actos de represalia, una vez radicada la querella, se establecen las siguientes medidas:
1. En aquellos casos en que el querellado sea el supervisor directo del querellante, se asignará a otra área de trabajo bajo otro supervisor.
2. El querellante no estará en ningún momento a solas con el querellado. La relación de trabajo se dará en presencia de otra persona, por escrito u otros medios como teléfono y/o grabaciones.
3. Estas medidas serán efectivas hasta tanto surja la determinación final en el caso y de ésta ser apelada, hasta tanto se resuelva la apelación.”
La revisión judicial de las decisiones administrativas, aunque restringida, tiene como propósito fundamental el delimitar la discreción de los organismos administrativos, además de velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. T-JAC Inc. v. Caguas Centrum. Limited, 148 D.P.R. 70, 80 (1999). Como se sabe, la facultad revisora de los tribunales a las decisiones emitidas por una agencia administrativa es limitada. El alcance de la revisión judicial comprende tres áreas. Ellas son: (1) Concesión del remedio apropiado, (2) Revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial, y (3) Revisión completa y absoluta de las conclusiones de derecho. [1] Este ejercicio por parte del tribunal revisor está enmarcado en dos principios fundamentales que postula la Ley Núm. 170 de 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme (en adelante, L.P.A.U.). 3 L.P. R.A. see. 2101 et. seq.. “Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo”. 3 L.P.R.A. see. 2175. Sin embargo, “[I]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal.” Id. Es por tanto indispensable que la agencia realice determinaciones de hechos y conclusiones de derecho que puedan proporcionar a los tribunales la base en la que descansó la decisión del organismo administrativo. De esta forma, los tribunales estarán en posición de descargar su función revisora responsablemente.
Es principio cardinal que como tribunal revisor le debemos deferencia a las decisiones de las agencias administrativas. Oficina Procuradora Paciente v. Aseguradora MCS, 163 D.P.R. 21 (2004). No obstante, la norma de revisión de las determinaciones administrativas fundamentada en la deferencia judicial a éstas, no nos obliga a soslayar o rendir nuestra función revisora cuando dicha decisión administrativa no está sustentada por evidencia sustancial en el récord o cuando son irrazonables o contrarias a derecho. Autoridad de Energía Eléctrica v. Maxon Engineering Services, Inc., 163 D.P.R. 434 (2004); Pacheco Torres v. Estancias de Yauco, 160 D.P.R. 409 (2003).
La evidencia sustancial, según ha sido definida, "es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Misión Ind. P.R. v. J.P., 146 D.P.R. 68 (1998); Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953). Por ello, la parte afectada por una determinación de hecho de una agencia debe, en primer lugar, "demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración". Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999); Misión Ind. P.R. v. J.P., supra. Si la parte afectada no demuestra la existencia de otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor. Ramírez Rivera v. Depto. de Salud, supra. Esto persigue evitar que los tribunales sustituyan el criterio de la agencia por el suyo propio.
El Tribunal Supremo de Puerto Rico ha sostenido que las decisiones de los organismos administrativos
*856 merecen la mayor deferencia judicial por razón del conocimiento especializado y la experiencia en cuanto a los asuntos que les son encomendados. Otero Mercado v. Toyota de Puerto Rico, 163 D.P.R. 716 (2005). Al revisar una decisión administrativa, el criterio rector será la razonabilidad en la actuación de la agencia. Conforme al criterio de razonabilidad y deferencia, como ya se ha dicho, los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, “si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad”. Otero Mercado v. Toyota de Puerto Rico, supra, Pacheco Torres v. Estancias de Yauco, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc., 148 D.P.R. 387, 397 (1991).
Debemos, asimismo, tener presente que los procedimientos y decisiones de un organismo administrativo tienen a su favor una presunción de corrección y regularidad, la cual debe ser respetada, mientras la parte que la impugne no produzca suficiente evidencia para derrotarla en un proceso adecuado y ante un foro competente. Pérez Vélez v. VPH Motors Corp., 152 D.P.R. 475 (2000); Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987); M. & B.S., Inc. v. Departamento de Agricultura, 118 D.P.R. 319, 331 (1987). Por ello, los tribunales debemos ser cautelosos al intervenir con las determinaciones de los organismos administrativos y ser deferentes con ellos, como correctamente lo exige la see. 4.5 de la L.P.A.U., 3 L.P.R.A. see. 2175; Viajes Gallardo v. Clavell, 131 D.P.R. 275, 289-290 (1992).
Las conclusiones de derecho de la agencia, distinto de las determinaciones de hechos, pueden ser revisadas en todos sus aspectos por el tribunal, 3 L.P.R.A. see. 2175, sin sujeción a norma o criterio alguno. Esto no significr sin embargo, que al ejercer su función revisora, el tribunal pueda descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, hemos reiterado consistentemente que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos. Puerto Rico Telephone Company, v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, 151 D.P.R. 269 (2000).
En -cuanto a la apreciación de la prueba, es nuestra obligación respetar la apreciación de la agencia en cuanto a la credibilidad de los testigos. Hilton Hotels Internationals v. Junta de Salario Mínimo, supra. No debemos perder de vista que la determinación en cuanto al testimonio y la deducción de hechos establecidos en la vista le corresponde al organismo adjudicador, por lo que este tribunal no debe pasar sobre la credibilidad del testigo o repesar la evidencia, sino que se limitará a tomar el récord en su totalidad, para determinar si contiene evidencia sustancial que sostenga las conclusiones de la agencia. J.R.T. v. Línea Suprema Inc., 89 D.P.R. 840 (1964).
ni
En su primer señalamiento de error, el recurrente plantea que la Procuradora no debió determinar que AEMEAD violó su propia política pública al incumplir con implantar en su totalidad el procedimiento interno para procesar querellas sobre hostigamiento sexual en el empleo.
En su informe, la Oficial Examinadora concluyó que hubo violación del procedimiento intemo por parte de AEMEAD en dos instancias. En primer lugar, la Oficial Examinadora concluyó que no se proveyeron medidas preventivas específicas para evitar el contacto del alegado hostigador y la alegada hostigada, y segundo, porque no se ofrecieron charlas a los empleados de la Agencia sobre este tema.
Sobre este último incumplimiento señalado por la Oficial Examinadora, AEMEAD nos plantea que, a su entender, no tenía obligación legal alguna para dar charlas periódicas sobre hostigamiento sexual, y que no se estableció cómo la ausencia de esas charlas provocó la presentación de una querella. Indica el recurrente que lo que la Ley 17, y la jurisprudencia interpretativa, han reconocido como las obligaciones del patrono, son el expresar claramente que éste tiene una política contra el hostigamiento sexual y que debe dar a conocer la misma a sus empleados.
*857 Como indicamos, el Artículo 10 de la Ley 17, supra, dispone que entre las medidas que debe tomar el patrono para desalentar la conducta del hostigamiento sexual en el empleo, esté el establecer un procedimiento interno para atender querellas de ese tipo. La referida Ley establece además que “un patrono será responsable por los actos de hostigamiento sexual entre empleados, en el lugar de trabajo si el patrono o sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta a menos que el patrono pruebe que tomó una acción inmediata y apropiada para corregir la situación.” Artículo 6, Ley 17, 29 L.P.R.A. see. 155 (e).
Entendemos que AEMEAD debe regirse por el procedimiento interno que ellos mismos adoptaron con el fin de poner en vigor la política pública de la Ley 17. Esta ley le impone al patrono una obligación general de expresar claramente la existencia de una política en contra del hostigamiento sexual. La propia Ley sostiene que, para cumplir con ese fin, el patrono debe establecer un procedimiento interno adecuado y efectivo para atender querellas. Artículo 10 (d), Ley 17, 29 L.P.R.A. see. 155 i (d). En Albino v. Martínez, 171 D.P.R._ (2007), 2007 J.T.S. 117, el Tribunal Supremo dispuso que ante la existencia de un protocolo, la controversia debe ser analizada tomando en consideración lo establecido en dicho procedimiento. En este caso, AEMEAD estableció su procedimiento interno desde el año 2000 y en el mismo se indicó expresamente que para dar cumplimiento al deber de informar sobre la política pública en contra del hostigamiento sexual, la Agencia debe coordinar y ofrecer charlas educativas. Art. V (b) del Procedimiento Interno, supra. Del informe de la Oficial Examinadora surge que tanto directores como empleados de AEMEAD con sus testimonios confirmaron que la agencia no realizó seminarios o charlas sobre el tema del hostigamiento sexual antes del año 2006. El recurrente no ha señalado alguna otra prueba que surja del expediente que contradiga esa información o que menoscabe el valor probatorio de dichos testimonios. Por lo tanto, entendemos que fue razonable la determinación de la Oficial Examinadora sobre el incumplimiento del deber de orientar a los empleados sobre la política en contra del hostigamiento sexual.
Sobre el incumplimiento con el deber de tomar acción inmediata y apropiada una vez radicada la querella, debemos señalar que surge del informe de la Oficial Examinadora que la señora Rivera presentó una queja escrita ante el Director Ejecutivo de AEMEAD el 7 de noviembre de 2005 y, hasta al menos el 28 de noviembre de 2005, esta agencia permitió que el señor Pacheco continuara trabajando junto a la señora Rivera. Sobre ese particular, AEMEAD no ha presentado otra prueba que contradiga dicha información. El Tribunal Supremo de Puerto Rico ha interpretado que una acción inmediata y apropiada es aquella que razonablemente terminará sin demora los actos de hostigamiento sexual y evitará la repetición de éstos de manera efectiva. Albino v. Martínez, supra. Además, en este caso de Albino v. Martínez, el Tribunal Supremo indicó que “para determinar si un patrono tomó una acción inmediata o apropiada es necesario examinar las circunstancias particulares de cada caso, entre éstas, la existencia de un reglamento aplicable a la situación y el cumplimiento por el patrono con lo allí dispuesto”. Expresó el Tribunal Supremo en el citado caso que al determinar si un patrono ha tomado una acción inmediata y apropiada ante una querella de hostigamiento sexual entre empleados es necesario evaluar si éste cumplía con los deberes continuos que le impone la Ley 17. Para eso “es necesario evaluar si el patrono tenía una política efectiva contra el hostigamiento sexual en el empleo; si expresaba claramente y tomaba las medidas necesarias para crear conciencia y dar a conocer dicha política; si daba suficiente publicidad en el lugar de trabajo sobre los derechos y protecciones que cobijan a los empleados; y si había establecido un procedimiento adecuado y efectivo para atender querellas sobre hostigamiento sexual”. Id (énfasis nuestro).
Evidentemente, en este caso hubo un lapso de tiempo considerable entre el momento en que se presentó la queja y el momento en que se trasladó al supervisor de la persona que presentó la misma. Esto implica un claro incumplimiento con el procedimiento interno existente, por lo cual, la determinación de la Oficina de la Procuradora respecto a este punto fue razonable.
Entendemos que en el procedimiento interno creado por AEMEAD claramente se establecieron los deberes incumplidos y en controversia. Es decir, con el fin de dar cumplimiento a la política pública contenida en la Ley *858 17, AEMEAD se comprometió a impiementar su propio procedimiento para atender ese tipo de quejas. Ese procedimiento no contradice a la Ley 17, sino, todo lo contrario, detalla y expone claramente los pasos a seguir, no solamente cuando se presenta la queja, sino antes de ocurrir cualquier incidente promoviendo la implementación de medidas preventivas. No hay razón para que nos limitemos a interpretar únicamente las disposiciones de la Ley 17, cuando, como ya indicamos, existía un protocolo más específico aplicable a esta controversia, que no contradice las disposiciones de la referida Ley.
En ausencia de perjuicio u otra evidencia sustancial que obre en el expediente, no tenemos razón para intervenir con el criterio utilizado por la Procuradora, la cual, en el ejercicio de las facultades que le otorga la Ley, concluyó que se cometieron las violaciones señaladas al procedimiento interno. Por tales razones, concluimos que no se cometió el primer error señalado.
En su segundo señalamiento de error, el recurrente plantea que la Oficina de la Procuradora no debió imponer una multa de $5,000.00 a AEMEAD. Sostiene el recurrente que no se debió haber impuesto esa suma porque no hubo violación alguna, ya que no se estableció de qué manera se violaron los derechos de la señora Rivera. La Ley Orgánica de la Oficina de la Procuradora, supra, faculta a dicha entidad a imponer multas administrativas hasta un máximo de $10,000. 1 L.P.R.A. see. 321. La Procuradora puede imponer multas cuando determine que se ha violentado alguna lev o política pública que protege los derechos y beneficios concedidos a las mujeres en Puerto Rico. Id. Las multas son impuestas luego de llevarse a cabo un proceso adjudicativo según dispone el Reglamento sobre Procedimientos Investigativos y Adjudicativos de la Oficina de la Procuradora de las Mujeres, supra. Las agencias administrativas tienen discreción para seleccionar sanciones que les ayuden a cumplir sus objetivos dentro del marco de su conocimiento especializado y de la ley. Assoc. Ins. Agencies v. Comisionado de Seguros, 144 D.P.R. 425 (1997). A las agencias se le reconoce mucha discreción para seleccionar las sanciones que le ayuden a cumplir con los objetivos estatutarios, siempre que haya obrado dentro del marco de su conocimiento especializado y de la ley. Id. La revisión judicial debe limitarse a evitar que las agencias actúen en forma ilegal, arbitraria, en exceso de lo permitido por ley o en ausencia de evidencia sustancial que justifique la medida impuesta. Comisionado de Seguros v. Antilles, Ins. Co. 145 D.P.R. 226 (1998). En este caso, la agencia recurrida ha actuado dentro de las facultades que le concede la ley. Como remedio, se impuso una multa dentro del marco que la Ley Orgánica lo permite. El recurrente no ha demostrado que la Procuradora haya incurrido en una actuación que envuelva un claro prejuicio, parcialidad o error. Por lo tanto, concluimos que no se cometió el segundo error señalado.
Por último, el recurrente nos plantea un tercer señalamiento de error en el cual aduce que la Procuradora no debió ordenar a AEMEAD a cumplir con el procedimiento interno, toda vez que la Oficial Examinadora expresamente indicó que no entraría a dirimir la ocurrencia del hostigamiento sexual en el presente caso. En su informe, la Oficial Examinadora señaló en una nota al calce lo siguiente:
“Debido a que la controversia que nos ocupa gira en tomo a un alegado incumplimiento por parte de la querellada de su deber de investigar y procesar, de forma afirmativa, la querella de hostigamiento sexual presentada por la Srta. Rivera, no se pretende dilucidar aquí los alegados actos de hostigamiento sexual, ni si los mismos ocurrieron o no.”
El Reglamento sobre Procedimientos Investigativos y Adjudicativos, supra, sección 18.04, dispone que la Procuradora puede otorgar el remedio que proceda en derecho los cuales podrán incluir sanciones, multas, acciones correctivas y órdenes de cesar y desistir. Entiende AEMEAD que la Oficial Examinadora, en la medida en que no entró a dilucidar la ocurrencia de los alegados hechos, imposibilitó que la Procuradora pudiera concluir que, el que no se proveyeran charlas, constituyó una violación a los derechos de la señora Rivera. No tiene razón.
Como indicamos anteriormente, la Oficina de la Procuradora tiene entre sus deberes y funciones el *859 radicar, a su discreción, ante los tribunales, los foros administrativos e instramentalidades y subdivisiones políticas del E.L.A., las acciones que estime pertinentes para atender las violaciones a la política pública de dicha entidad. Artículo 9, Ley Núm. 20, 1 L.P.R.A. see. 317. La Oficina también debe adjudicar querellas relacionadas con acciones y omisiones que lesionen los derechos de las mujeres, y puede conceder los remedios pertinentes conforme a derecho, así como ordenar acciones correctivas a cualquier agencia que niegue, entorpezca viole o perjudique los derechos y beneficios de las mujeres. Artículo 10 (a), Ley Núm. 20, 1 L.P.R.A. see. 318 (a). Es decir, dicha Oficina está facultada para estudiar los señalamientos de violación de leyes o reglamentos que se presenten ante si y puede tomar acciones correctivas para evitar que se perjudiquen los derechos de las mujeres. En este caso, la propia Agencia recurrente se impuso la obligación de dar charlas o adiestramientos a sus empleados sobre la política pública en contra del hostigamiento sexual. De igual manera se impuso el deber de tomar acciones inmediatas al momento de que se presenten quejas de este tipo. Coincidimos con la conclusión de la Procuradora respecto a que no existe controversia sobre el hecho de que AEMEAD no ofreció las charlas educativas o adiestramientos, ni sobre que no se tomaron acciones inmediatas y apropiadas tan pronto surgió la queja de la señora Rivera. Entendemos que no era necesario entrar a dilucidar si en efecto se cometieron o no los actos de hostigamiento sexual, originalmente imputados. La ocurrencia del hostigamiento imputado no era la controversia que tenía ante si la Procuradora.
Para cumplir con su política pública, la Oficina de la Procuradora debe velar porque la legislación establecida con ese propósito sea puesta en vigor para prevenir actos discriminatorios o que violen derechos de la población a la que atienden. Esto, independientemente de que no se hubiere determinado la existencia de hostigamiento sexual en el procedimiento interno seguido por la agencia. Esto no impide el que puedan dictarse acciones correctivas e imponer multas a la agencia. En este caso, la Oficial Examinadora en su informe claramente indicó que su rol se limitaría a evaluar los señalamientos sobre el incumplimiento con los deberes establecidos en el procedimiento interno y en la ley.
No obstante, debemos dejar claro que a la Oficial Examinadora no le correspondía pasar juicio sobre el informe realizado por AEMEAD. Si la querellante quería impugnar el informe realizado por dicha Agencia debió solicitar revisión en treinta días ante el foro dispuesto por el Procedimiento Interno. [2] No surge del expediente que dicha solicitud se haya efectuado. Por lo tanto, entendemos que al momento de ventilarse la queja que nos ocupa ante la Procuradora, este foro carecía de jurisdicción para atender planteamientos relacionados con los méritos del informe preparado por AEMEAD.
Sin embargo, creemos que dicho asunto no tiene ningún efecto sobre lo dispuesto en la Resolución recurrida. Reiteramos que la determinación de si ocurrió o no el hostigamiento alegado no incide en forma alguna en la facultad en ley que tiene la Procuradora para atender la queja que nos ocupa. Esto es, quejas relacionadas al incumplimiento con el deber de educar, así como, con el deber de tomar acciones inmediatas y apropiadas que la fuerte política pública contra el hostigamiento sexual y los reglamentos internos le imponen a las agencias. En este caso, a la AEMEAD. Las violaciones que encontró la Procuradora pueden ser tratadas independientes al hecho de si el hostigamiento sexual alegado en efecto se cometió. Inclusive independientemente de si ha ocurrido alguna imputación de hostigamiento en particular. Se trata, en particular, de fiscalizar y velar la implementación correcta de una política pública que afecta a todos los empleados que trabajen en AEMEAD, y en general, acciones u omisiones que lesionen derechos de la mujer.
IV
Por los fundamentos expuestos, se confirma la Resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Leda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
*860 ESCOLIOS 2010 DTA 30

. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. ed., Bogotá, Forum, 2001, pág. 534.

. El Artículo X del Procedimiento Interno, supra, establece que el empleado tendrá derecho a apelar en treinta (30) días ante la Junta de Apelaciones del Sistema de Administración de Personal. En la actualidad, dicha acción debe ejercerse ante la Comisión Apelativa del Sistema de Administración de Recursos Humanos (CASARH) creada por la Ley Núm. 184 de 3 de agosto de 2004.